Approved: _____
DANIEL H. WOLF
Assistant United States Attorney

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

18 MAG 9293

------------------------------------X
                                    :  SEALED COMPLAINT
UNITED STATES OF AMERICA            :
                                    :  Violations of 18 U.S.C.
         - v. -                     :  §§ 1952(a)(3), 2421(a),
                                    :  1591(a)(1), (a)(2), and
ISHI WONEY,                         :  2
                                    :
              Defendant.            :  COUNTY OF OFFENSE:
                                    :  BRONX
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

RACHEL L. GRAVES, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI") Child Exploitation Trafficking Taskforce, and charges as follows:

**COUNT ONE**
(Use of an Interstate Facility to
Promote, Manage, and Carry on Prostitution)

1. In or about September 2017, in the Southern District of New York and elsewhere, ISHI WONEY, the defendant, did knowingly use, a facility in interstate commerce, with the intent to promote, manage, establish, and carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, and thereafter performed and attempted to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, and carrying on of such unlawful activity, to wit, WONEY used the Internet to promote, manage, establish, and carry on a criminal business engaged in prostitution in violation of New York Penal Law §§ 230.00, 230.20, and 230.25.

(Title 18, United States Code, Sections 1952(a)(3) and 2)

**COUNT TWO**
(Mann Act)

2.   In or about November 2017, in the Southern District of New York and elsewhere, ISHI WONEY, the defendant, did knowingly transport an individual in interstate and foreign commerce, and in a Territory and possession of the United States, with intent that such individual engage in prostitution, and a sexual activity for which a person can be charged with a criminal offense, and attempted to do so, to wit, WONEY transported a female, Victim-1, to multiple states, including New York, with the intent that she engage in prostitution.

(Title 18, United States Code, Sections 2421(a) and 2.)

**COUNT THREE**
(Sex Trafficking by Means of Force, Threats, Fraud, and Coercion)

3.   Between in or about February 2018 through the present, in the Southern District of New York and elsewhere, ISHI WONEY, the defendant, knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized and solicited a person, and did benefit, financially and by receiving things of value, from participation in a venture which had engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause that person to engage in commercial sex acts, to wit, WONEY recruited and coerced through force, threats, fraud, and coercion an individual, Victim-1, to engage in commercial sex acts, in the Bronx, New York, and elsewhere, for which WONEY was paid.

(Title 18, United States Code, Sections 1591(a)(1), (a)(2), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.   I am a Special Agent with the FBI. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my

2

investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Commercial Sex Acts by Victim-1 and Victim-2 at WONEY's Behest

5. Based on my review of materials obtained from a social media company ("Social Media Company-1") pursuant to search warrants, my review of notes pertaining to consensual interviews of ISHI WONEY, the defendant, and a victim of a sex trafficking, Victim-1, by the New York City Police Department ("NYPD"), my review of law enforcement records pertaining to an investigation by the NYPD into the disappearance of a female victim of sex trafficking other than Victim-1, i.e., Victim-2, my review of government records related to WONEY, and my training and experience, I have learned the following, in substance and in part:

a. On or about August 26, 2017, an account maintained with Social Media Company-1 that I believe to be used by and registered to WONEY (the "Woney Social Media Account"), received a private message via a messaging service provided by Social Media Company-1 ("Social Media Messenger-1") from an account maintained with Social Media Company-1 that I believe to be used by and registered to Victim-1 (the "Victim-1 Social Media Account"), asking "wyd," an acronym which I know to mean "what you doing?" Approximately seven hours later, the Woney Social Media Account replied that the user of that account, whom I believe to be WONEY, was "Trapping," a term which I know is often used as a synonym for "pimping" or "sex trafficking."

b. On or about September 3, 2017, between approximately 1:20 a.m., and approximately 1:33 a.m., the Victim-1 Social Media Account sent the Woney Social Media Account the following private messages via Social Media Messenger-1:

| Sender | Recipient | Message |
|--------|-----------|---------|
| Victim-1 | WONEY | I'm safe I'm okay I have a half hour date for 90 |
| Victim-1 | WONEY | Daddy |
| Victim-1 | WONEY | I'm at the holiday |
| Victim-1 | WONEY | Room 209 |

I believe the foregoing conversation indicates that on or about September 3, 2017, Victim-1 was engaging in a commercial sex act ("a half hour date for 90 [dollars]") in "Room 209" of a hotel on behalf of WONEY, whom Victim-1 referred to as "Daddy"—a term

3

often used by victims of sex trafficking in reference to their "pimps."

6. Based on my review of materials obtained from Social Media Company-1 pursuant to search warrants, my review of notes pertaining to consensual interviews of ISHI WONEY, the defendant, and a victim of a sex trafficking, Victim-1, by the NYPD, my review of records associated with a particular phone number ("Phone Number-1"), my review of law enforcement records pertaining to an investigation by the NYPD into the disappearance of Victim-2, my review of government records related to WONEY, my review of information provided to the Government pursuant to Grand Jury subpoenas, my review of information provided to the Government by the Office of the District Attorney of New York ("DANY"), and my training and experience, I have learned the following, in substance and in part:

a. In or about August 2017, Victim-2, then 19 years-old, traveled to New York, New York, from her hometown in Pennsylvania.

b. Between on or about September 4, 2017, and on or about September 9, 2017, Victim-2 reserved a room at a hotel in the Bronx, New York, known to me as a location of substantial sex trafficking activity ("Hotel-1").

c. In or about September 2017, WONEY met Victim-2 at Hotel-1.

d. Between on or about September 10, 2017, and on or about September 20, 2017 (that is, prior to Victim-2's disappearance), the last phone number known to be used by Victim-2, i.e., Phone Number-1, exchanged 806 text messages with a phone number ("Phone Number-2") that WONEY contemporaneously identified to others as his own phone number.

e. On or about September 17, 2017, the Woney Social Media Account sent via Social Media Messenger-1 an account held with Social Media Company-1 that I believe to be used by and registered to Victim-2 (the "Victim-2 Social Media Account") a photograph depicting Victim-1, Victim-2, and WONEY in what I believe to be the interior of a hotel room.

7. Based on my review of notes pertaining to consensual interviews by the NYPD of ISHI WONEY, the defendant, and Victim-1, my review of law enforcement records pertaining to an investigation by the NYPD into the disappearance of Victim-2,

4

my review of information provided to the Government pursuant to Grand Jury subpoenas, and my training and experience, I have learned the following, in substance and in part:

    a. No later than on or about September 20, 2017, WONEY had a falling out with Victim-2 because Victim-1 was jealous of WONEY's relationship with Victim-2.

    b. On or about September 20, 2017, was the last time WONEY was with Victim-2.

    c. On or about that day, WONEY was present with Victim-2 at a hotel in Queens, New York ("Hotel-2"), where another male reserved and paid for a room where Victim-2 was planning to stay that night.

### WONEY's Use of the Internet to Advertise Commercial Sex Acts

    8. Based on my review of materials obtained from Social Media Company-1 pursuant to search warrants, my review of law enforcement records pertaining to an investigation by the NYPD into the disappearance of Victim-1, my review of records provided to the Government by DANY, and my training and experience, I have learned the following, in substance and in part:

    a. The Woney Social Media Account is registered to an email address ("Email Address-1") that contains components of the first and last names of ISHI WONEY, the defendant.

    b. On or about September 3, 2017, at approximately 4:38 a.m., an advertisement ("Advertisement-1") for a commercial sex act was purchased for posting on a classifieds website ("Website-1") by a user ("User-1") who identified his/her email address as Email Address-1. Accordingly, I believe User-1 of Website-1 is WONEY.

    c. Advertisement-1 included a headline of "Two girl special nunu enterprises," was marketed specifically to the "Bronx," and included pictures that I believe depict both Victim-1 and Victim-2.

    d. The text of Advertisement-1 stated, in part: "always ready for fun! Please Be RESPECTFUL & Discreet the TOTAL package SKILLS That will make you melt."

    e. User-1, whom I believe to be WONEY, was invoiced for posting Advertisement-1 on Website-1 on approximately

5

17 occasions between September 3, 2017, and September 12, 2017.

### Commercial Sex Acts in New York State by Victim-1

9. Based on my review of a commercial database containing a repository of online sex trafficking advertisements ("Database-1"), my personal review of materials obtained from Social Media Company-1 pursuant to search warrants, my review of law enforcement records, and my training and experience, including but not limited to training in facial recognition techniques, I have learned the following, in substance and in part:

   a. Database-1 is a commercial database that "crawls" classified websites suspected of containing advertisements for commercial sex acts and compiles pertinent data from such advertisements, presenting such data in a searchable database.

   b. Public records associated with Victim-1 identified her phone number to be Phone Number-3 as of on or about July 2, 2017.

   c. Database-1 identifies that between on or about September 6, 2017, and on or about June 8, 2018, Phone Number-3 was used as the contact number in approximately 474 advertisements on websites known by law enforcement to contain classified advertisements for commercial sex acts. Those advertisements were expressly directed at markets in Connecticut, New Jersey, and the Bronx, New York, among other places. In particular:

   > i. Between on or about September 30, 2017, and on or about November 1, 2017, Phone Number-3 was used as the contact number in approximately 52 advertisements (the "Pre-November 2 Advertisements") on websites known by law enforcement to contain classified advertisements for commercial sex acts.
   >
   > ii. The Pre-November 2 Advertisements contain a photograph of a partially nude woman who I believe to be Victim-1.
   >
   > iii. The Pre-November 2 Advertisements were expressly directed at the Bronx, New York.

10. Based on my review of NYPD law enforcement records, my review of Database-1, and my training and experience, including

6

but not limited to training and experience in facial recognition, I have learned the following, in substance and in part:

   a. On or about November 2, 2017, an undercover member of the NYPD ("UC-1") engaged in a text message conversation with Phone Number-3, which, as noted, was identified as Victim-1's phone number as of on or about July 2, 2017.

   b. UC-1 initiated the text message conversation by explaining he was "looking to spend some time" with the user of Phone Number-3 on or about November 2, 2017, and asking the user of Phone Number-3 "where in the city are you." The user of Phone Number-3 responded that she was in the "Bronx" but that the user of Phone Number-3 did not "have a room right now."

   c. On or about November 3, 2017, at approximately 12:05 a.m., UC-1 sent a text message to the user of Phone Number-3 asking her to "let me know where you are." The user of Phone Number-3 replied the same day, between approximately 12:06 a.m., and approximately 12:12 a.m., "I went to nj hun" and that she was at a hotel in East Orange, New Jersey ("Hotel-2").

   d. On or about November 3, 2017, two NYPD officers, acting on the text message exchanged between UC-1 and the user of Phone Number-3 and their suspicion that Phone Number-3 was associated with Victim-1, found ISHI WONEY, the defendant, and Victim-1 at Hotel-2 in New Jersey and interviewed them in connection with the disappearance of Victim-2.

   e. At some point prior to on or about November 2, 2017, WONEY reserved a room at Hotel-2 under his own name with an arrival date of on or about November 2, 2017, and a departure date of on or about November 4, 2017, and that WONEY paid for the room with cash.

   f. Between on or about November 2, 2017, and on or about November 9, 2017, Phone Number-3 was used as the contact number in approximately 40 advertisements on websites known by law enforcement to contain classified advertisements for commercial sex acts. Those advertisements were expressly targeted at locations in northern New Jersey, including East Orange, New Jersey, where Hotel-3 is located.

   g. Accordingly, I believe that after on or about November 2, 2017, Victim-1 engaged or attempted to engage in commercial sex acts on WONEY's behalf in New Jersey — and that

Victim-1 traveled between New York State and New jersey at WONEY's behest to do so.

### WONEY's Use of Force against Victim-1

11. Based on my review of law enforcement records, my review of materials obtained from Social Media Company-1 pursuant to search warrants, my review of information provided to the Government pursuant to Grand Jury subpoenas, and my training and experience, including but not limited to training and experience in facial recognition, I have learned the following, in substance in part:

    a. A reservation was made by Victim-1 at a hotel in Jersey City, New Jersey ("Hotel-3") for February 23, 2018, through February 26, 2018.

    b. On or about February 26, 2018, ISHI WONEY, the defendant, was arrested at Hotel-3 (the "Woney Arrest") for possessing a controlled dangerous substance, in violation of N.J. Rev. Stat. § 2C:35-10.a(1), and for simple assault, in violation of N.J. Rev. Stat. § 2C:12-1A(1).

    c. On or about February 26, 2018, WONEY was with Victim-1 at Hotel-3, where WONEY punched Victim-1 in the face, took possession of Victim-1's money and belongings, and refused to return such money and belongings to Victim-1. The police officers who initially responded to the complaint underlying the Woney Arrest observed Victim-1 to have a swollen lip and scratches on her face.[1]

    d. On or about February 28, 2018, the Woney Social Media Account exchanged private text messages using Social Media Messenger-1 with an account I believe to be used by and registered to an associate of WONEY, CC-1, informing CC-1 that "shortie [Victim-1] blew and called the cops on me" because "i had another hoe." WONEY further informed CC-1 via Social Media Messenger-1 that WONEY understood that Victim-1 told the police that "i [WONEY] beat her im her pimp and i force her to trap."

    e. On or about April 25, 2018, the Victim-1 Social Media Account left a voicemail ("Voicemail-1") via Social Media Messenger-1 with the Woney Social Media Account. Voicemail-1 contains a female voice in distress that I believe is associated

---

[1] Victim-1 refused to be photographed or to press charges against WONEY in connection with the Woney Arrest.

with Victim-1 asking "can I have my stuff back? That's all I have. Why are you doing this?"

    f. I believe the foregoing (Paragraph 11.a-e) indicate that WONEY uses force and the threat of force to exert control over Victim-1 to engage in commercial sex acts.

### Victim-1's Continued Commercial Sex Acts in New York on behalf of WONEY

    12. Based on my review of law enforcement reports generated in connection with an undercover operation investigating commercial sex acts ("UC Operation-1"), my review, pursuant to a search warrant, of a mobile telephone seized from Victim-1 during UC Operation-1, my review of law enforcement records pertaining to an investigation by the NYPD into the disappearance of Victim-2, my review of notes pertaining to consensual interviews of ISHI WONEY, the defendant, and Victim-1 by the NYPD, my review of information provided to the Government pursuant to Grand Jury subpoenas, my review of information provided to DANY, my review of Database-1, and my training and experience, I have learned the following, in substance and in part:

    a. On or about October 4, 2018, using an image-search function in Database-1, a law enforcement officer identified an advertisement for a commercial sex act featuring pictures of a female believed to be Victim-1 and believed to have been featured in other online advertisements for commercial sex acts featuring Victim-1. That advertisement ("Advertisement-2") had been posted to a classifieds website that day (on or about October 4, 2018). Advertisement-2 stated that the subject of the advertisement sought a "generous gentleman to fulfill my needs" and was expressly targeted to the "Bronx, New York." Advertisement-2 also listed a phone number ("Phone Number-4") as the phone number for a respondent to Advertisement-2 to contact.

    b. On or about October 11, 2018, an undercover member of the NYPD ("UC-2") exchanged multiple text messages with Phone Number-4 and expressed an interest in engaging in a commercial sex act. That evening, UC-2 was directed by the user of Phone Number-4 to a hotel in the Bronx, New York ("Hotel-4"). Upon UC-2's arrival at Hotel-4, UC-2 sent a text message to Phone Number-4 indicating his arrival, and the user of Phone Number-4 (believed to be Victim-1) responded by instructing UC-2 to go to Room 110 of Hotel-4.

c.  On or about October 11, 2018, at approximately 10:40 p.m., Phone Number-4, believed to be used by Victim-1, sent Phone Number-2, believed to be used by WONEY, a text message stating "I have a ss coming right now before my hour date." I believe the term "ss" is an acronym for "short stay," which is a term used to describe a half-hour commercial sex act.

d.  On or about October 11, 2018, between approximately 11:12 p.m. and 11:15 p.m., Phone Number-2, believed to be used by WONEY, sent Phone Number-4, believed to be used by Victim-1, the following text messages:

| Sender | Recipient | Message |
|---|---|---|
| WONEY | Victim-1 | Yooo the boys is there |
| WONEY | Victim-1 | Yo be on point |
| WONEY | Victim-1 | You don't give dates the right room |
| WONEY | Victim-1 | The room next door |

I interpret the foregoing text messages to involve WONEY coordinating a commercial sex act that Victim-1 was going to engage in.

e.  On or about October 11, 2018, at or after approximately 11:15 p.m., UC-2 arrived at Room 110 of Hotel-4, where UC-2 was greeted by Victim-1 and entered an agreement with Victim-1 to pay her $200.00 to engage in sexual intercourse for an hour. Almost immediately thereafter, UC-2 relayed to additional members of the NYPD that he had successfully agreed with Victim-2 to engage in a commercial sex act. Additional members of the NYPD then entered Room 110 of Hotel-4 and effectuated an arrest of Victim-1 (the "Victim-1 Arrest"), who at that point identified herself as the first and last name of Victim-1.

f.  Following the Victim-1 Arrest, a mobile telephone ("Mobile Telephone-1") in Victim-1's possession began ringing as it received an incoming video call from WONEY. As Mobile Telephone-1 was so ringing, Victim-1 informed a law enforcement officer ("LEO-1") in her presence, in substance and in part, that WONEY was calling her on Mobile Telephone-1.

g.  Victim-1 then indicated that LEO-1 was permitted to answer Mobile Telephone-1. LEO-1 proceeded to answer Mobile Telephone-1, and a video call commenced during which LEO-1 observed an individual he believed to be WONEY on a live video feed.

h.  Approximately one hour after LEO-1's video-call with WONEY on Mobile Telephone-1, while LEO-1 was with Victim-1 at

10

an NYPD station in the Bronx, New York, Mobile Telephone-1 rang several times and displayed on its screen a caller name that Victim-1 identified as WONEY.

        i.  During a consensual interview with law enforcement officers after the Victim-1 Arrest, Victim-1 identified to law enforcement officers that WONEY is her "pimp," stated that she engages in commercial sex acts on behalf of WONEY, and stated that she gives the money she earns from engaging in such commercial sex acts to WONEY.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ISHI WONEY, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
RACHEL L. GRAVES
Special Agent
Federal Bureau of Investigation


Sworn to before me this
**31** day of October, 2018

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

11